IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOY GRAY,**  PLAINTIFF

v. CASE NO. 4:25CV1057-LPR

RENEE MALLORY, In her Individual capacity
and in her Official capacity as Secretary
of the Arkansas Department of Health;
DON ADAMS, In his Individual capacity
and in his Official capacity as Chief of
Staff in the Office of the Governor; CASSIE
COCHRAN, in her Individual capacity
and in her Official capacity as Deputy Director
of Programs at the Arkansas Department of
Health; CRISTY (CHRISTY) SELLERS, In her
Individual capacity and in her Official capacity
as Director of Health Advancement at the
Arkansas Department of Health; and
REGGIE ROGERS, in his Individual capacity
And in his Official capacity as Deputy Chief
Legal Counsel at the Arkansas Department of
Health,   DEFENDANTS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
OCT 09 2025
TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

## PLAINTIFF'S BRIEF IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

**COMES NOW,** the Plaintiff, **JOY GRAY**, by and through counsel, **SUTTER & GILLHAM, P.L.L.C.**, who for her Brief in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, she states:

### TABLE OF CONTENTS

Introduction

Factual Background

Legal Standard (Dataphase)

Argument

I. Ms. Gray Is Likely to Succeed on the Merits

  A. Core Political Speech—Heightened Protection

  B. No Pickering Disruption Showing; Balancing Not Triggered

  C. Policies Invoked Are Vague/Overbroad As Applied

II. Irreparable Harm

III. Balance of Equities

IV. Public Interest

V. Bond Should Be Waived

Conclusion

## Introduction

This case presents core First Amendment and Fourteenth Amendment violations. Ms. Gray was interrogated over private-citizen political speech on her personal social media, compelled to draft an apology and rebuttal by noon on September 16, 2025, then fired the afternoon before that deadline, and later denied a name-clearing hearing while ADH cited her "reaction" and introduced new emails post hoc. The First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom" and public square. *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

## Factual Background

On September 15, 2025, supervisor Cristy Sellers directed Ms. Gray to meet ADH Deputy Chief Legal Counsel Reggie Rogers about complaint emails regarding Ms. Gray's private social-media posts.

In the ADH law library, Rogers distributed complaint emails, said the matter was "very serious" and could lead to termination, interrogated Ms. Gray about references to a

public figure, refused context (including religious/prayer references), and escalated his tone.

Rogers acknowledged Ms. Gray did not list ADH on her social media but asserted the public could connect her to ADH. He demanded an apology to third parties and a written rebuttal by noon on September 16, 2025; Sellers told Ms. Gray to send the letter quickly.

That afternoon, counsel emailed Rogers requesting a short extension. No response. Instead, at approximately 4:36 p.m. on September 15—before the stated deadline—Sellers terminated Ms. Gray by phone while Rogers was on speaker.

In Ms. Gray's grievance, ADH asserted she refused to submit a rebuttal, cited her "reaction" during the meeting, and produced additional emails not shown at the meeting. Ms. Gray was never afforded a name-clearing hearing.

### Legal Standard (Dataphase)

The standards for TROs and preliminary injunctions in the Eighth Circuit are set out in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc): (1) likelihood of success; (2) irreparable harm; (3) balance of the equities; and (4) public interest. See *United States v. Barnes*, 912 F. Supp. 1187, 1192 (N.D. Iowa 1996); *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020). Where a plaintiff shows a likely First Amendment violation, the remaining factors normally follow.

### Argument

**I. Ms. Gray Is Likely to Succeed on the Merits**

## A. Core Political Speech—Heightened Protection

The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964); see *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964) ("speech on public issues" lies at the core). Speech on public issues "occupies the highest rung" of First Amendment values and warrants "special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

The alleged offense is not a basis to punish speech: "the government may not prohibit the expression of an idea simply because society finds the idea offensive or disagreeable." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (quoting *Texas v. Johnson*, 491 U.S. 397, 414 (1989)); see *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 574 (1995).

Public employees retain strong protection for out-of-work, private-citizen political speech. See *Rankin v. McPherson*, 483 U.S. 378, 392 (1987) (firing law-enforcement clerk for quip about President's assassination attempt violated First Amendment).

Officials cannot coerce others to suppress disfavored viewpoints. *NRA of Am. v. Vullo*, 602 U.S. 175, 180, 188 (2024) (reaffirming *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).

Retaliation for protected speech is presumptively unconstitutional. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Rosenberger v. Rector & Visitors*, 515 U.S. 819, 830 (1995).

These principles—cited and applied in the attached memorandum—squarely protect Ms. Gray's private-citizen commentary and prohibit punishment based on viewpoint.

### B. No Pickering Disruption Showing; Balancing Not Triggered

Pickering balancing is triggered only if the government specifically shows the speech "created workplace disharmony, impeded the plaintiff's performance or impaired working relationships." *Noon v. City of Platte Woods*, 94 F.4th 759, 765 (8th Cir. 2024) (quoting *Lindsley v. City of Orrick*, 491 F.3d 892, 900 (8th Cir. 2007)).

Where there is no evidence of disruption, there is nothing to balance. *Mayfield v. Haahr*, 122 F.4th 1046, 1053 (8th Cir. 2024) (quoting *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020)).

The Eighth Circuit recently emphasized the state's burden to come forward with concrete, not "vague and conclusory," evidence, lest the doctrine devolve into a heckler's veto. *Melton v. City of Forrest City*, 147 F.4th 896, 902–03 (8th Cir. 2025).

Here, the record shows no concrete disruption to ADH operations, only reactive controversy to Ms. Gray's viewpoint. That is insufficient to invoke Pickering.

### C. Policies Invoked Are Vague/Overbroad As Applied

Government standards that allow punishment of protected speech must be articulated with clarity; vague standards invite caprice and discrimination. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

Content- or viewpoint-based applications are overbroad and unconstitutional. *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *Matal v. Tam*, 582 U.S. 218, 223 (2017).

As applied to Ms. Gray's private-citizen speech, any reliance on nebulous "agency impairment" or "social media" provisions to punish viewpoint fails these doctrines.

## II. Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *Doe v. Mills*, 142 S. Ct. 17, 22 (2021); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); see also *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2364 (2025).

## III. Balance of Equities

When likely First Amendment violations are shown, the balance of harms favors relief and the public interest is served by protecting speech. See *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam)).

## IV. Public Interest

"[T]he public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern." *Dakotans for Health v. Johnson*, No. 4:25-cv-04050-CCT, Doc. 68 at 16 (Aug. 29, 2025) (quoting *Kirkeby v. Furness*, 52 F.3d 722, 775 (8th Cir. 1995)).

## V. Bond Should Be Waived

Because Defendants will incur no cognizable damages from compliance and this suit vindicates the public interest in constitutional rights, the Court should waive Rule 65(c) security. *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016).

## Conclusion

Ms. Gray respectfully requests a Temporary Restraining Order and Preliminary Injunction: (1) enjoining maintenance/enforcement of her termination and any retaliation for protected speech; (2) requiring a prompt, neutral name-clearing hearing if stigmatizing reasons are disseminated; (3) prohibiting policies/practices used to punish viewpoint-based private-citizen speech; and (4) waiving bond.

Respectfully submitted,

Luther Oneal Sutter, ARBN 99199
**SUTTER & GILLHAM, P.L.L.C.**
1501 N. Pierce, Ste. 105
Little Rock, AR 72207
501-315-1910, Phone

By : /s/ Luther Oneal Sutter
Luther Oneal Sutter, ARBN 95031
Luther.sutterlaw@gmail.com

*Counsel for Plaintiff Joy Gray*

By : /s/ Lucien Gillham
Lucien Gillham, ARBN 99199
Lucien.gillham@gmail.com

*Counsel for Plaintiff Joy Gray*