IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOY GRAY**                                                                                    **PLAINTIFF**

v.                            CASE NO. 4:25-cv-1057-LPR

**RENEE MALLORY, et al.**                                                          **DEFENDANTS**

<u>**DECLARATION OF RENEE MALLORY**</u>

I, Renee Mallory, am competent to testify and have personal knowledge regarding the statements contained in this declaration, and do hereby state and verify the following:

1. I am employed with the Arkansas Department of Health ("ADH"), 4815 West Markham Street, Little Rock, Arkansas 72205.

2. Specifically, I am employed as the Secretary of ADH.

3. I was initially appointed interim Secretary in May of 2022, and have held the permanent title since August of 2023.

4. My role as Secretary is to oversee all operations, deal with everyday issues, plan for current and future operations, and make sure that the Agency is seen as the overall authority for public health in Arkansas.

5. On or around September 12, 2025, I opened an email from an individual named Tim Mitchell that referred to social media posts made by ADH employee Joy Gray.

6. Viewing this as a personnel issue, I sent this to Chief of Staff Don Adams, and we discussed with the ADH legal team how to proceed investigating the allegations.

7. I was informed by staff that additional complaints came in from the public and that Ms. Gray's comments were beginning to go viral on Twitter/X, with screenshots of her LinkedIn page identifying ADH employment and pleas to call ADH human resources hotlines.

8. On Monday, September 15, 2025, Ms. Gray met with her supervisor Cristy Sellers and ADH Legal Counsel Reggie Rogers to discuss the social media comments and the investigation that was ongoing.

9. That Monday, I had several conversations with Don Adams, representatives of the Governor's office, and other senior leadership to assess the current and future disruption to ADH operations that Ms. Gray's public comments on the murder of Charlie Kirk could cause.

10. My first more general concern was that Ms. Gray's comments, seemingly making light of the assassination of a public figure, are directly antithetical to ADH's overall mission of protecting and ensuring the health of human beings in Arkansas and across the country.

11. My more specific concerns related to the nature of Ms. Gray's position as a Branch Manager of a high-profile, highly-scrutinized and important program: the Tobacco Prevention and Cessation Branch ("TPCB").

12. Ms. Gray's position routinely required interfacing with the legislature and other external partners such as health initiatives, community partners, and state, county and local government.

13. In her job, being public-facing is unavoidable: that position must work with communities, and outside partners to ensure that our tobacco prevention programs, one of the programs with the largest budgets in the agency, runs efficiently and effectively.

14. Further, funding for the Tobacco Cessation program is precarious and highly sought-after: everyone wants a piece of its funding and its funding can be taken away or redistributed elsewhere by the legislature at any time.

15. Especially since public health agencies became more divisive during the Covid-19 pandemic, ADH has been working tirelessly to build public trust in its missions and operations.

16. We have held numerous individual visits with legislators, county officials, and other external partners to ensure that we are aligned in mission and working to improve public health in Arkansas and to strengthen those relationships which are critical to being able to effectively carry out that mission.

17. I knew when the public feedback to Ms. Gray's comments began coming in that Ms. Gray's continued employment was a danger to the precarious external relations work critical to ADH operations.

18. I reasonably believed, when considering what action to take in regard to Ms. Gray that if she were not terminated, that not only the very important work she did in Tobacco Cessation but all of the work that ADH does in general (all of which requires legislative appropriation and oversight) would be disrupted and harmed.

19. Accordingly, together with Don Adams and with input from the Governor's Office, I decided that ADH had no choice but to terminate Ms. Gray in order to prevent reasonably foreseeable disruptions to critical ADH programming and operations.

**FURTHER DECLARANT SAYETH NOT**.

*Renee Mallory*
RENEE MALLORY

10/23/25
DATE