IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOY GRAY                                                                                    PLAINTIFF

v.                             CASE NO. 4:25-cv-1057-LPR

RENEE MALLORY, et al.                                                              DEFENDANTS

**DECLARATION OF DON ADAMS**

I, Don Adams, am competent to testify and have personal knowledge regarding the statements contained in this declaration, and do hereby state and verify the following:

1. I am employed with the Arkansas Department of Health ("ADH"), 4815 West Markham Street, Little Rock, Arkansas 72205.

2. Specifically, I am employed as the Chief of Staff for ADH.

3. The Chief of Staff position is over operations and administration, human resources, finances, and information technology.

4. Because Human Resources, and the Human Resources Director, are under my purview, I routinely deal with personnel matters, including but not limited to discipline and termination.

5. On or around September 12, 2025, I learned that ADH Secretary Mallory had received complaints on September 11, 2025, from a member of the public regarding social media posts made by ADH employee Joy Gray.

6. ADH leadership received copies of the social media posts in question, which appeared to be public comments on the KARK Channel 4 Facebook news story about Charlie Kirk being shot.

7. Also on September 12, 2025, two additional email complaints were sent to the ADH Communications office, including one with the subject line "Appalling public statement" and a screenshot of Ms. Gray's LinkedIn profile photo layout with "Branch Chief at the Arkansas Department of Health" as the listed occupation.

8. Around the same time, screenshots of Ms. Gray's comments began circulating on Twitter/X along with instructions on how to contact ADH Human Resources.

9. Also on September 12, 2025, executive assistant Lezlie Smith also received a complaint call from the public relating to Ms. Gray's social media comments.

10. ADH immediately began investigating the comments on September 12, 2025, seeking to determine their source and speak to Ms. Gray, who was out of the office on previously scheduled leave.

11. As part of the investigation, an ADH employee who was friends on Facebook with Ms. Gray showed Deputy Director of Public Health Programs Cassie Cochran Ms. Gray's profile.

12. Ms. Cochran informed me that Ms. Gray's personal profile contained both photographs and narratives relating to her work for ADH, including most recently a post containing a photograph and description of her recognition for an ADH initiative for which she had received recognition.

13. Before further investigation into her comments could be completed, Ms. Gray's Facebook and Twitter/X profiles were deleted.

14. On Monday, September 15, 2025, I directed Reggie Rogers and Christy Sellers to hold an employee investigation meeting as outlined by ADH policy with Ms. Gray to allow her to explain her comments and respond to the investigation.

15. I was informed that during this meeting, Ms. Gray vacillated between denial (that there had been typos and missing words in the posts that affected their meaning) and acceptance.

16. Later that Monday, I held several meetings and conversations among ADH leadership, legal and the Governor's Office, after which the final decision was made to terminate Ms. Gray based on two violations of ADH Employee Disciplinary Policy.

17. The two violations were of REL-42, paragraph 8, and REL-47.

18. REL-42 allows for discipline up to and including termination for "[t]he use of threatening or abusive language or actions, posting of offensive materials, any harassment, or discourteous, indecent, or immoral conduct."

19. REL-47 allows for discipline up to and including immediate termination for "employees who engage in any type of conduct or performance that may be injurious to the Agency, or which interferes with the efficient operations, damages the reputation of ADH, or interferes with the Agency's ability to serve customers and the public"

20. My ultimate decision to terminate was based not on the fact that Ms. Gray made a public statement about a matter of public importance, but because the manner in which she did so created immediate disruption to department operations; and I reasonably predicted based on my experience with the Agency that it would create much more disruption in the future.

21. Ms. Gray's position at ADH was Branch Chief/Manager for the Tobacco Prevention and Cessation Branch ("TPCB") of the Division of Health Advancement.

22. The TPCB is a high-profile, public-facing branch that receives substantial funding from the Tobacco Master Settlement Agreement ("MSA") fund, allocated by the legislature among the TPCB and other program budgets within the ADH.

23. The TPCB is a hot-button branch of the ADH because of its funding and is often a highly scrutinized program externally by the legislature. As a high-profile branch, it also receives substantial interest from external community, health and corporate partners.

24. Ms. Gray was the face of this program, and her job duties required her to provide legislative testimony, presentations, and answer questions from legislators.

25. Ms. Gray was also obligated to provide public-facing presentations to external community and health partners and be hosted on in-state morning news programs to publicize TPCB programming.

26. The TPCB specifically and ADH generally rely extensively on political capital to fund and execute their important organizational functions.

27. It was reasonable to predict that Ms. Gray's inflammatory public comments would severely disrupt ADH and TPCB operations because of the impact those comments would have on political partnerships necessary to accomplish those operations.

28. Beyond just the specific legislative requirements of Ms. Gray's position, all of which were imperiled by the nature of her public comments, it was reasonably predictable that Ms. Gray's comments would disrupt ADH operations that she did not directly oversee.

29. For example, ADH has been working steadily over several years to build and improve partnerships with county judges, quorum courts, and local county governments in all 75 of Arkansas's counties.

30. More than ninety Local Health Unit buildings are owned and maintained by local governments (County Judges, Quorum Courts, Mayors, City Councils, etc.), and it is only through these critical partnerships that ADH can offer its essential services to the Arkansans that live in those counties.

31. These partnerships are politically precarious and, as a result, ADH and its employees frequently try to avoid wedge issues or other controversial topics in its public communications.

32. Based on my 35 years of experience with ADH, I believed that Ms. Gray's comments reasonably imperiled many of these partnerships and would result in an almost certain loss of credibility and trust with ADH community partners.

33. If one of the community partners withdrew their support for ADH and prevented use of a Local Health Unit housed in a county building, then bedrock ADH programs such as Clinical Services (immunizations, maternity services, reproductive health services, communicable disease prevention) would either be completely unavailable to the Arkansans in those counties or their availability would be severely disrupted and/or made cost prohibitive.

34. Based on my 35 years of experience with ADH, I also believe the nature of Ms. Gray's comments directly undermines the core mission of ADH, to protect the health and safety of all individuals, and that ADH's hard-won public trust, which is integral to the ability to efficiently accomplish that mission, would have taken a significant hit had she remained employed.

35. In addition to these reasonably foreseeable and potentially severe disruptions to ADH operations, Ms. Gray's comments led to immediate disruption in the form of public calls and emails and the need for additional security at ADH locations.

36. It was because of these immediate and reasonably foreseeable future disruptions to ADH operations, funding and mission that the decision was made to terminate Ms. Gray.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

**FURTHER DECLARANT SAYETH NOT.**

_____
DON ADAMS

10-23-25
_____
DATE

6