IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOY GRAY**                                                                                                                  **PLAINTIFF**

**v.**                               **CASE NO. 4:25-cv-1057-LPR**

**RENEE MALLORY, et al.**                                                            **DEFENDANTS**

### DECLARATION OF CRISTY SELLERS

I, Cristy Sellers, am competent to testify and have personal knowledge regarding the statements contained in this declaration, and do hereby state and verify the following:

1. I am employed with the Arkansas Department of Health ("ADH"), 4815 West Markham Street, Little Rock, Arkansas 72205.

2. Specifically, I am employed as the Director for the Division of Health Advancement.

3. I have worked at ADH for twenty-five years and as Director for the Division of Health Advancement since December of 2016.

4. My role is to oversee ADH preventative programs relating to tobacco, WIC Supplemental Nutrition Program, oral health, family health and chronic disease.

5. I have supervised ADH employee Joy Gray, who served as Branch Manager for the Tobacco Prevention and Cessation Branch, since approximately 2018 or 2019.

6. On or around September 12, 2025, I became aware that ADH employee Joy Gray had made public social media posts relating to the murder of Charlie Kirk after ADH received multiple complaints from the public by email and phone.

7. Ms. Gray was on preapproved leave on September 12, 2025, so ADH Legal, through Reggie Rogers, and myself met with Ms. Gray the following Monday, September 15, 2025, to investigate her comments and discuss them with her.

8. During that meeting, Ms. Gray was provided a copy of the social media comments she had made and asked about each comment individually.

9. Ms. Gray's first reaction was to state that she did not recall making the statements, but she later admitted that she made the comments.

10. Ms. Gray attempted to excuse certain comments by arguing that certain words were missing and certain words were autocorrected.

11. Mr. Rogers was firm in his statements that Ms. Gray's social media comments potentially violated multiple ADH policies and that this was a serious issue, but he never yelled at Ms. Gray or acted inappropriately or unprofessionally in any other way.

12. ADH requested a written response from Ms. Gray, and she said she felt she could have the statement and any related documentation submitted by Tuesday, September 16, a date upon which all parties present agreed.

13. Later that same day, the decision was made to terminate Ms. Gray.

14. I did not take part in the decision making process, but as her supervisor it was my job to communicate to her and administratively carry out the termination, which I did.

15. I agreed with the termination because Ms. Gray violated established ADH policy in a manner that, because of the public-facing nature of her position as Branch Manager of a high-profile branch, would not have allowed her to effectively accomplish her branch's goals and mission going forward.

16. All ADH branch chiefs are at a level where they face the public – they must attend public meetings, meet with community partners, health entities, general members of the public, etc.

17. An important part of a branch chief's job is to be the public face of ADH and the specific program they manage.

18. Ms. Gray has appeared before the legislature with me on numerous occasions.

19. Together or on her own she has and would have continued to have to meet with the Arkansas Tobacco Settlement commission, the Tobacco Advisory Committee, the Parks, Heritage and Tourism committee, UAMS and other health providers, and numerous other local community partners.

20. The Tobacco Prevention and Cessation branch has numerous subgrants with groups like the Arkansas Cancer Coalition and the Arkansas Lung Coalition.

21. Based on my decades of experience at ADH and my nearly nine years running the preventative programs division, I believe that Ms. Gray's comments diminished and would have continued even more severely diminishing our ability to work with these coalitions.

22. I believe that Ms. Gray's comments would have caused ADH trouble in getting cooperation from community partners across the state and would have resulted in individuals and certain groups refusing to collaborate or partner with ADH or the Tobacco Cessation and Prevention program in particular.

23. Further, from a personnel management perspective, there are staff at ADH that I believe would not have wanted to work with her anymore as her comments became public, which would have been disruptive to our operations.

**FURTHER DECLARANT SAYETH NOT**.

_____
CRISTY SELLERS

_10/23/2025_____
DATE