IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOY GRAY**                      **PLAINTIFF**

VS.                       **CASE NO: 4:25-CV-1057-LPR**

**RENEE MALLORY,**     **et al.,**                 **DEFENDANTS**

<u>**REPLY IN SUPPORT OF**</u>
<u>**RESPONSE TO MOTION TO DISMISS**</u>

    **COMES NOW** the Plaintiff, **JOY GRAY**, by and through counsel, **SUTTER & GILLHAM, P.L.L.C.**, and for the Reply in Support of the Motion for a Preliminary Injunction, states:

<u>INTRODUCTION</u>

    On the First Amendment retaliation claim, Defendants argue that a preliminary injunction putting Gray back to work is inappropriate because: (1) she cannot show a likelihood of success; and (2) she cannot show irreparable harm and any harm would be overmatched by prejudice to the Defendant. As to the first argument, Defendant's claim Gray's speech was so incendiary that under a *Pickering* analysis, her speech would not be protected, and, even if it were, it would be a close enough question to merit the imposition of qualified immunity.

    On the procedural due process claim seeking a hearing, Defendants argue that money damages are sufficient and that bringing her back will render her unable to operate their agency.

<u>ARGUMENT</u>

**I.**     **First Amendment Retaliation Claim**

    **A.**     **Likelihood of success - Defendant's *Pickering* argument fails**

"Defendants do not dispute that Plaintiff's speech was on a matter of public concern so as

to trigger the threshold requirement that Defendants establish that said speech "created workplace disharmony, impeded [Gray's] performance, …impaired working relationships" or otherwise "had an adverse impact on the efficiency of [ADH's] operations." *Melton v. City of Forrest City, Arkansas*, 147 F.4th 896, 902 (8th Cir. 2025) (quoting *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020)). There's no dispute the termination was related to her speech. So the only out for Defendant on likelihood of success is on a *Pickering* defense. The Eighth Circuit's decisions in a long line of cases, culminating in *Melton v. City of Forrest City*, 147 F.4th 896 (8th Cir. 2025), dictate that there is insufficient evidence to put *Pickering* at issue. That in turn means Plaintiff has a high likelihood of success.

Before the Court employs the *Pickering* balancing test, we must determine whether May has produced sufficient evidence that Anderson's speech disrupted jail operations. *Hall v. Mo. Highway & Transp. Comm'n*, 235 F.3d 1065, 1068 (8th Cir. 2000). If the answer is no, Whether a public employee's speech is protected by the First Amendment requires a two-step judicial inquiry. If the speech addresses a matter of public concern, the court must balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968). Both of these questions are questions of law for the court. *Connick*, 461 U.S. at 148 n.7, 150 n.10.

The "government must be able to give a good reason . . . for wanting to deter protected speech by attaching a sanction to it." *Eberhardt*, 17 F.3d at 1027. The Court judges the government's asserted reason with the *Pickering* balancing test. *Pickering*, 391 U.S. at 568-73. That test requires a balancing of Plaintiff's interests, as a citizen, in making the statements against

"the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. at 568. The Court takes into account a number of interrelated factors, including "(1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or would cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties." *Belk*, 228 F.3d at 880-81. Defendant bears the burden of establishing permissible grounds for Plaintiff's discharge. See *Kincade*, 64 F.3d at 397.

Defendant has the burden of showing by a preponderance of the evidence that this balance weighs in its favor. *Gustafson v. Jones*, 290 F.3d 895, 906, 909 (7th Cir. 2002). Mere allegations, as those here, of disruption are insufficient to put *Pickering* balancing at issue. *See Sexton v. Martin*, 210 F.3d 905, 912-13 (8th Cir. 2000) (affirming refusal to apply Pickering balancing); *Belk*, 228 F.3d 881-82 (same); *Kincade*, 64 F.3d at 398 (same).

"As a threshold matter, however, we must ask whether Taylor has produced evidence to indicate the speech had an adverse impact on the efficiency of the City's operations. *Belk*, 228 F.3d at 878 (citing *Sexton v. Martin*, 210 F.3d 905, 911-12 (8th Cir. 2000)). Absent such a showing, "there are no government interests in efficiency to weigh against First Amendment interests" and we need not engage in the *Pickering* balancing test. *Id*. at 881.

Mere allegations the speech disrupted the workplace or affected morale, without evidentiary support, are insufficient. *Belk*, 228 F.3d at 881; *Kincade v. City of Blue Springs*, 64 F.3d 389, 398-99 (8th Cir. 1995) (finding mere assertion that contested speech "caused the City problems" and

"adversely affected the efficiency of [the] City's operations and substantially disrupted the work environment," with no supporting evidence, insufficient to trigger Pickering). To put the *Pickering* balancing test at issue, the public employer must proffer sufficient evidence that the speech had an adverse impact on the department. *Sexton v. Martin*, 210 F.3d 905 (8th Cir. Mo. 2000).

In *Powell v. Basham*, denial of qualified immunity was affirmed. The Court noted that "courts have acknowledged the existence of special concerns with respect to law-enforcement agencies which allow for greater restrictions on free expression", but that: "Defendants have not yet produced any evidence to show that Powell's criticisms adversely affected the department." *Powell v. Basham*, 921 F.2d 165, 168 (8th Cir. 1990).

In *Shockency v. Ramsey County*, the Eighth Circuit described the *Pickering* analysis, stating:

> Appellants assert that they need not show "actual disruption," but only that "the ordinary or foreseeable effect of the conduct" would be to disrupt department efficiency . . . . Although law enforcement predictions of disruption are due some deference, the *Pickering* balancing test only need be conducted if a government employer has produced evidence of workplace disruption.  *See, e.g., Kincade v. City of Blue Springs Mo.*, 64 F.3d 389, 398 (8th Cir. 1995) (bare allegations that speech negatively impacted workplace efficiency insufficient to reach *Pickering* balancing test); *Buzek v. County of Saunders*, 972 F.2d 992, 997 (8th Cir. 1992); *Burnham*, 119 F.3d at 680 (no qualified immunity since defendant offered no evidence of disruption).

493 F.3d 941, 949-950 (8th Cir. 2007).

Furthermore, in *Sexton v. Martin*, another law enforcement case, the Eighth Circuit has stated that:

> Before the Court commences the *Pickering* balancing test, however, it is critical to determine whether the defendant has produced sufficient evidence that the speech had an adverse effect on the efficiency of the employer's operations.  In other words, **to put the *Pickering* balancing test at issue, the public employer must proffer sufficient evidence that the speech had an adverse impact on the department.  The more the employee's speech reflects matters of public**

>  concern, the greater the employer's showing must be that the speech was disruptive before the speech can be punished.

210 F.3d 905, 911-12 (8th Cir. 2000) (emphasis added)(citing *Burnham v. Ianni,* 119 F.3d 668, 678-79 (8th Cir. 1997)(*en banc*). The Eighth Circuit already describes the burden of showing disruption as "substantial." *Burnham*, 119 F.3d at 679.

Following are examples where Pickering was not adequate to justify a termination. In *Shockency*, a law enforcement case, there was no qualified immunity under *Pickering* because: (1) there were no specifics; and (2) despite the fact that Moore, a plaintiff in that case, testified that "coworkers in the apprehension unit tried to provoke him." *Shockency*, 972 F.2d at 949-50.

In *Lindsey v. City of Orrick, Missouri,* the defendant's *Pickering* arguments failed despite testimony of dislike of the plaintiff and actual arguments amongst staff. In part their argument failed because they did not establish that the dislike and arguments sprang from the speech. In part it was because dislike and arguments did not establish an impairment of the working relationship or any actual disruption. *Lindsey v. City of Orrick, Missouri,* 491 F.3d 892, 900-01 (8th Cir. 2007).

In *Sexton*, there was testimony that the supervisors were angry, and expressed their anger to the decision-maker, that the chain of command had been violated, a resignation occurred, and citizens appeared before the board to express anger; but it was insufficient, because there was no indication it impaired working relationships or departmental operations. *Sexton v. Martin*, 210 F.3d at 911-913.

In *Washington v. Normandy Fire Protection District*, the Eighth Circuit reaffirmed *Sexton*, holding that even with a paramilitary organization such as a fire department, a *Pickering* analysis is only reached "if it is first established that the speech in question created a disruption in the workplace." *Washington v. Normandy Fire Protection District*, 272 F.3d 522, 526 (8th Cir. 2001).

In *Buzek v. County of Saunders*, a law enforcement case, the Eighth Circuit noted that law enforcement agencies are entitled to some deference, but found a *Pickering* defense to be unavailing because "defendants failed to offer any proof that Buzek's letter had a detrimental impact on the department's legitimate interests."

Very recently, there is the case of *Melton v. City of Forrest City*, 147 F.4th 896 (8th Cir. 2025).  In June 2020, on his own time and page, Melton posted "a black-and-white image on Facebook that depicted a silhouette of a baby in the womb with a rope around its neck." Id., 900, 902.  It appeared to other to be "a noose around the neck of a black child." Id. The caption to the image "'I can't breathe!,' was associated with the protests surrounding George Floyd's death." Id. So, comparing this to Gray's speech, it was up longer, also made comments some found offensive related to a highly public and illegal death.  Additionally, in the south, there is a very traditional association of nooses with lynchings and the child appeared to be black.

So, now let us compare the disruption in *Melton* to this case.  In Melton, the Mayor :

> He was concerned about the "huge firestorm" it had created. Among other things, the fire chief's phone had been "blowing up," "several" police officers had become "very upset," and the "phone lines" were jammed with calls from angry city-council members and citizens. Some said that Melton "should not be a part of the . . . fire department responding to calls." A few even said that they did not want "him coming to their house . . . for a medical call or fire emergency." According to the mayor, these complaints "threaten[ed] the City's ability to administer public services."

Id., 901.  Here, we have two emails and a call, all from the same person. We have a bunch of predicted disruption, but no actual disruption.  This evidence was described as thin, and

> The problem is that there was no showing that Melton's post had an impact on the fire department itself. No current *firefighter* complained or confronted him about it. Nor did any co-worker or supervisor refuse to work with him. Granting summary judgment based on such "vague and conclusory" concerns, without more, runs the risk of constitutionalizing a heckler's veto.

Id., 903.  In making its decision, the Eighth Circuit stated:

> What the district court should not have done was automatically give the mayor's belief "considerable judicial deference." Shands v. City of Kennett, 993 F.2d 1337, 1345 (8th Cir. 1993). As one of our cases puts it, "we have never granted any deference to a government supervisor's bald assertions of harm based on conclusory hearsay and rank speculation." *Burnham, 119 F.3d at 680*. Keep in mind that, in addition to the lack of evidence supporting the mayor's prediction, his brief investigation could lead a reasonable jury to conclude that what he said masked the true reason for Melton's firing, which was a disagreement with the viewpoint expressed in the image.

*Melton*, 147 F.4th at 904.

What we have in this case does not compare favorably to the evidence in *Melton*. Notably, as in *Melton*, this case led to a very quick termination after a brief investigation, which as in *Melton,* is suggestive of a termination based on viewpoint discrimination, especially in light of telling her she could do an apology and rebuttal and then withdrawing that. In *Melton*, there phones were blowing up. Phone lines were jammed. People were calling very upset. People said they did not want Melton coming to their home. Here, there is two calls and an email, all by the same person, and foundation-less, predicted disruption by the agency. No actual disruption of operations was shown at all.

In *Melton*, greater evidence of disruption was insufficient to cause judgment based on qualified immunity grounds. Here, lesser evidence of disruption fails to even make a *Pickering* analysis appropriate. Given the admission that Plaintiff's speech was on a matter of public concern and that the termination was directly related to it, the failure of this defense means Plaintiff has a high likelihood of success and that this factor merits an injunction.

Notably, in another case involving commentary on the death of Mr. Kirk, claims of disruption were rejected based on Melton's reasoning, even though Defendants claimed: "hundreds of calls and message were made to the Board of Regents and/or the University of South Dakota commenting negatively regarding the comment or calling for the removal of Professor

Hook." *Hook v. Rave*, 4:25-cv-04188-KES, D.E. 11, p. 8 (D.S.D. 9/24/25). That too involves more evidence than was shown here.

**B.     Irreparable harm and prejudice to the Defendants**

Notably, Hook also provides an excellent analysis of irreparable harm: "Under the second *Dataphase* factor, Hook must show that he is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). 'Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.' *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). But in cases implicating the First Amendment, courts normally assume irreparable injury because 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (internal quotation marks omitted); *see also Iowa Right to Life Comm., Ins. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999)." *Hook v. Rave*, 4:25-cv-04188-KES, D.E. 11, p. 11 (D.S.D. 9/24/25). Likewise, here the impairment of the First Amendment constitutes irreparable harm.

Defendant claims that it cannot run the department if Plaintiff is reinstated and that it will be irreparably harmed if an injunction is granted. Once again, this argument has already been addressed in *Hook*: "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 870 (8th Cir. 2012) (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011))." *Hook v. Rave*, 4:25-cv-04188-KES, D.E. 11, p. 11 (D.S.D. 9/24/25).

**C.     Public Interest**

"The public has a compelling interest in protecting its First Amendment rights. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) ("[I]t is always in the public interest to protect constitutional rights.")." *Hook v. Rave*, 4:25-cv-04188-KES, D.E. 11, p. 12 (D.S.D. 9/24/25).

## II.   Procedural Due Process Claim

This is moot if reinstatement is ordered.  The Supreme Court has recognized in situations such as this that the Constitution's procedural due process protections require the employer to provide the employee with an opportunity to dispute the defamatory allegations in what is commonly referred to as a name-clearing hearing. *Codd v. Velger*, 429 U.S. 624, 627-28, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Singleton v. Cecil*, 176 F.3d 419, 427 (8th Cir.1999) (en banc), *cert. denied*, 528 U.S. 966, 120 S.Ct. 402, 145 L.Ed.2d 313 (1999). The right to a name-clearing hearing protects the employee's liberty interest in his or her good name and reputation, and it prevents a public employer from depriving an employee of that interest without due process. *See Merritt v. Reed*, 120 F.3d 124, 126 (8th Cir.1997).

"To establish a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, the plaintiff must demonstrate (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) the legal status of the plaintiff was altered or extinguished." *Singer v. Harris*, (E.D.Ark. 2015) (citing *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009). "In addition, he must prove he requested and was denied a name-clearing hearing." *Crooks* (citing *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006)).

Placing allegations in a personnel file is sufficient to satisfy the element of publication. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996); *Brandt v. Board of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987); *Velger v. Cawley*, 525 F.2d 334, 336 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger*, 429 U.S. 624, 51 L. Ed. 2d 92, 97 S. Ct. 882 (1977). We have recognized, in fact, that this is the very action that circulates the stigmatization. *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994).   In *Rosenstein v. Dallas*, 876 F.2d 392, 396 n.6 (5th Cir. 1989), the Fifth Circuit stated: "An employee may prove that the government agency is likely to make the charges public or that information about the charges is available to the public, although not publicized by the government. *See Wells*, 736 F.2d at 256. A name clearing is appropriate where comments are about the employee's "good name, reputation, honor or integrity." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 573 (1972); J. Michael McGuinness, Litigating Public Employee Procedural Due Process Claims, 715 PLI/LIT 489, 503 (2004).

As to likelihood of success, Defendant has admitted that Plaintiff pled that she was fired, that she requested a hearing, and that she was denied a hearing. D.E. 16, p. 10.  The request was made to Sellers.  D.E. 1, para. 14.  The attachment to the termination paperwork indicates she was fired for threatening or abusive language or actions, harassment, indecent or immoral conduct.  It accuses her of conduct damaging the agency and interfering with its ability to serve the public. Ex. C. According to DHS these allegations were already public and the subject of discussion on social media, so terminating her was going to inevitably lead to disclosure of these allegations.

As to irreparable harm, Plaintiff needs to get her side of this story out.  As to injury to Defendant, there will be none by having a hearing. It is in the public interest to for constitutional rights to be observed.

**WHEREFORE**, Plaintiff prays for an Order granting the Motion for a Preliminary Injunction, and for all other proper relief.

                                      Respectfully submitted,

                                      Lucien Gillham, ARBN 99199
                                      **SUTTER & GILLHAM, P.L.L.C.**
                                      1501 N. Pierce, Ste. 105
                                      Little Rock, AR  72207
                                      Phone 501-315-1910
                                      Lucien.gillham@gmail.com

By: */s/ Lucien Gillham*
     Lucien Gillham, ARBN 99199
     Lucien.gillham@gmail.com