**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JOY GRAY**                                                                          **PLAINTIFF**

**VS.**                              **CASE NO: 4:25-CV-1057-LPR**

**RENEE MALLORY,   et al.,**                                      **DEFENDANTS**

**AMENDED BRIEF IN SUPPORT OF**
**RESPONSE TO MOTION TO DISMISS**

COMES NOW the Plaintiff, Joy Gray, by and through counsel, Sutter & Gillham, P.L.L.C., and for the Brief in Support of the Response to the Motion to Dismiss the First Complaint, states:

INTRODUCTION

Plaintiff has brought claims of First Amendment retaliation, denial of procedural due process, conspiracy to commit constitutional violations under 1983/1985, outrage, substantive due process.

Plaintiff  moves to dismiss the outrage and substantive due process claims without prejudice.

As to First Amendment retaliation, Defendant argues that: (1) Gray's allegations of protected speech are conclusory and do not establish they were on a matter of public concern; (2) insufficient facts alleged to support individual liability.  The facts as stated in the Complaint, Gray's affidavit, the exhibits to it, and the Defendants' pleadings, affidavits, and exhibits, demonstrate speech on a matter of public concern and that the discharge was based on that speech, leaving only Pickering as a defense (but it is only argued against the preliminary injunction motion).

As to procedural due process, they argue there was no property interest in the job and that no liberty interest arose because she was not subjected to stigmatizing allegations in connection with her discharge.  Plaintiff was fired with statements made by the government that

are stigmatizing, requested a hearing, and was denied a hearing, so there is a procedural due process claim for a name-hearing.

As to conspiracy, Defendants argue: (1) no constitutional violation is pled; (2) individual involvement is not sufficiently pled; (3) meeting of the minds was not pled; and (4) there cannot be an agreement between or among agents of the same legal entity that is an unlawful conspiracy. he facts as stated in the Complaint, Gray's affidavit, the exhibits to it, and the Defendants' pleadings, affidavits, and exhibits, demonstrate that members of separate departments had a meeting of the minds to fire plaintiff based on the exercise of First Amendment rights, and, since they are not members of separate departments, they are not protected by the intracorporate conspiracy doctrine.

Defendants argue they are entitled to qualified immunity because a constitutional violation was not pled and there was no violation of clearly established law.   Based on the arguments above, her rights were clearly established.

## STANDARD OF REVIEW

When ruling on a motion to dismiss, the "Judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests. Id., at 93.  To survive a motion to dismiss, the complaint must "state a plausible claim for relief' that "permits the Court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  While a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, they must be "enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To state a claim, "a complaint need not alleged detailed facts; a plaintiff need only provide the grounds of his or her entitlement to relief.  Bare v. NPC Int'l, Inc., Civ. No. 09-2092 (W.D.Ark. 12/14/09) (citing Benton v Merrill Lynch & Co., Inc. 524 F.3d 866, 870 (8th Cir. 2008).  The facts in a complaint are to be considered as true and

construed in the favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). "It is not necessary to recite the elements of proof required to sustain a claim, and indeed, 'a formulaic recitation of the elements of a cause of action will not do." Fitzmorris v. Culpepper Co. of Fayetteville, Case No. 09-5233, DE 11 (W.D. Ark. 2010) (Citing Twombly).

"The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Rule 8 does not "require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful." Id., at 595. "Rather, it is sufficient for a plaintiff to plead facts indirectly show unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests . . . .'" Id. "Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." Id., at 596. "Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible." Id., at 597. All reasonable inferences are still to be drawn. Id., at 595.

Qualified immunity is an affirmative defense the defendant must prove. *Slone v. Herman*, 983 F.2d 107, 109 (8th Cir. 1993). The "qualified immunity inquiry is two-fold: (1) whether the facts asserted demonstrate a violation of plaintiff's constitutional right and (2) whether such right was clearly established at the time of the defendant's conduct." *Nord v. Walsh County*, 757 F.3d 734, 744 (8th Cir. 2014). "[T]his court has taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry." More particularly, the Court has stated, with regard to "clearly established" law, that:

> "In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look to all available decisional law including decisions of state courts, other circuits and district courts. . . ."

*Burnham v. Ianni*, 119 F.3d 668, 677 (8th Cir. 1997).  "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

<u>ARGUMENT</u>

**I.    First Amendment Retaliation**

Defendants argue the nature of the speech was not adequately pled to establish it is protected, that individual involvement was not adequately pled, and _.  All arguments fail.

As to the claim that protected speech is not adequately pled, Defendants themselves have stated: "Defendants do not dispute that Plaintiff's speech was on a matter of public concern . . . ."  D.E. 17, p. 6.  The affidavit noted she had made "social media posts" and that they were about Charlie Kirk.  D.E. 6, para. 3, 5, 6.  It notes that her comments "were made as a private citizen and were political commentary on matters of public concern."  D.E. 6, para. 15.  Defendants' own filings show portions of the relevant posts, one of which was: " . . . just like his quote about needing some unfortunate deaths for the 2nd amendment. He knew the risks and was shot doing his evil in the public."  D.E. 17-1, p. 2-5.   So, based on all this, we can dispense with the argument that Defendants do not have adequate notice of the nature of the speech based on the pleadings.

Next, as to individual involvement, Plaintiff has pled that Renee Mallory was secretary of the ADH, Don Adams was the Chief of Staff, Cassie Cochran was Deputy Director of Programs, and Christy Sellers was Director of Health Advancement and was plaintiff's direct supervisor. Finally, she has testified that Rogers was Deputy Chief Legal Counsel of ADH.  D.E. 1, para. 5-9.  She has pled that Sellers directed her to meet with Rogers about the social media posts.  D.E. 1, para. 10-11.  She has pled that Rogers produced emails and questioned her about the posts, speaking loudly and refusing to hear what she said.  D.E. 1, para. 11.  She has pled that Rogers cited ADH  policies, but admitted Gray had not identified herself as ADH on her accounts, but said the public could connect her.  He ordered her to do an apology letter and written rebuttal by 9/16/25.  D.E. 1, para. 12.  She asked for a little more time to respond, and instead Sellers fired

her, with Rogers present.  D.E. 1, para. 13.  Plaintiff has pled that all Defendants took action against her and punished her because she engaged in protected speech.  D.E. 1, para. 20, 23.

Since then Renee Mallory filed an affidavit indicating she is the Secretary and is responsible for all operations.  D.E 17-3, para. 5-7.  She indicated that she set her Chief of Staff, Don Adams to investigating this matter. Id.  She indicated that she conversed with Adams and to governor's office and other senior leadership about alleged disruption. D.E. 17-3, p. 9.  She alleges that she, along with Don Adams, and the Governor's office, decided to terminated Ms. Gray. D.E. 17-3, para. 11-19.

Adams has acknowledge being chief of staff and says he routinely deals with personnel matters, including terminations.  D.E. 17-4, para. 2-4. He indicates he directed Robert and Sellers to hold an employee investigation meeting with Gray.  Id., para. 14.  He was informed that she vacillated between denial and acceptance.  Id., para. 15.  He admits being involved in meetings with legal (Reginald Rogers), and the Governor's office, and "leadership", which a reasonable inference would include the Secretary, Deputy Director, and Plaintiff's boss. Id. Para. 16.  He admits he was one of the decision-makers as to the termination.

The notice of filing, Exhibit C, indicates that Reginald Rogers approved the termination decision.  Ex. C.  The termination document was signed by Ms. Sellers.  Ex. C. It also indicates that Christy Sellers requested the termination.  Id.

Both Adams and Mallory have acknowledged that the decision was related to the speech Gray engaged in, claiming it was too disruptive to be permitted. D.E. 17-3, para. 11-19; D.E. 17-4, para. 16-30.

Accordingly, based on the pleadings, affidavits and exhibits, it is clear that Plaintiff engaged in protected speech, that she was fired for it, and that the individuals sued had retaliatory intent.

## II.    Procedural Due Process

The Supreme Court has recognized in situations such as this that the Constitution's procedural due process protections require the employer to provide the employee with an opportunity to dispute the defamatory allegations in what is commonly referred to as a name-clearing hearing. *Codd v. Velger*, 429 U.S. 624, 627-28, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Singleton v. Cecil*, 176 F.3d 419, 427 (8th Cir.1999) (en bane), *cert. denied*, 528 U.S. 966, 120 S.Ct. 402, 145 L.Ed.2d 313 (1999). The right to a name-clearing hearing protects the employee's liberty interest in his or her good name and reputation, and it prevents a public employer from depriving an employee of that interest without due process. *See Merritt v. Reed*, 120 F.3d 124, 126 (8th Cir.1997).

"To establish a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, the plaintiff must demonstrate (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) the legal status of the plaintiff was altered or extinguished."  *Singer v. Harris*, (E.D.Ark. 2015) (citing *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009). "In addition, he must prove he requested and was denied a name-clearing hearing." *Crooks* (citing *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006)).

Placing allegations in a personnel file is sufficient to satisfy the element of publication. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996); *Brandt v. Board of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987); *Velger v. Cawley*, 525 F.2d 334, 336 (2d Cir. 1975), *rev'd on other grounds sub nom*. *Codd v. Velger*, 429 U.S. 624, 51 L. Ed. 2d 92, 97 S. Ct. 882 (1977). We have recognized, in fact, that this is the very action that circulates the stigmatization. *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994).   In *Rosenstein v. Dallas*, 876 F.2d 392, 396 n.6 (5th Cir. 1989), the Fifth Circuit stated: "An employee may prove that the government agency is likely to make the charges public or that information about the charges is

available to the public, although not publicized by the government. *See Wells*, 736 F.2d at 256. A name clearing is appropriate where comments are about the employee's "good name, reputation, honor or integrity." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 573 (1972); J. Michael McGuinness, Litigating Public Employee Procedural Due Process Claims, 715 PLI/LIT 489, 503 (2004).

Defendant has admitted that Plaintiff pled that she was fired, that she requested a hearing, and that she was denied a hearing. D.E. 16, p. 10. The request was made to Sellers. D.E. 1, para. 14. The attachment to the termination paperwork indicates she was fired for threatening or abusive language or actions, harassment, indecent or immoral conduct. It accuses her of conduct damaging the agency and interfering with its ability to serve the public. Ex. C. According to DHS these allegations were already public and the subject of discussion on social media, so terminating her was going to inevitably lead to disclosure of these allegations.

## III.    Conspiracy

That there was a consultation and meeting of the minds between the governor's office and DHS to fire plaintiff due to her speech, is not really in dispute given the affidavits of Mallory and Adams. So the main defense here, given that there is no *Pickering* defense, is whether or not Defendants can conspire with each other. Defendants rely upon *Ziglar v. Abbasi*, 582 U.S. 120, 153-155 (2017). That case found there was qualified immunity because the law was not clearly established. It did not adopt the intracorporate conspiracy defense. The Court did state: "These considerations suggest that officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities." However, the governor's office and DHS are not the same entity. In *Diggs v. City of St. Louis*, it was noted that the Eighth Circuit had applied the doctrine to 1985 claims, but had provided no direction as to 1983 claims. 2020 U.S.Dist.LEXIS 44990, *6 (E.D.Mo. 2020).

However, the Western District of Arkansas has noted: "the intracorporate conspiracy doctrine, which shields agents of a single corporation and employees of a single government

department acting within the scope of their employment from constituting a conspiracy under § 1985." *Clinard v. Wash. Reg'l Med. Ctr.*, 2021 U.S.Dist.LEXIS 197314, *12-13 (W.D.Ark. 2021). (Citing *Johnson v. Vilsack*, 833 F.3d 948, 958 (8th Cir. 2016)).

The governor's office and DHS are not part of the same department, so this is no defense to liability on a conspiracy claim.  Given the arguments as to the substance of the retaliation claims above, these claims should stand.

IV.    **Qualified Immunity**

A.    **Qualified Immunity is not a basis for dismissal on these facts.**

Qualified immunity is an affirmative defense the defendant must prove. *Slone v. Herman*, 983 F.2d 107, 109 (8th Cir. 1993). "When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (U.S. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999).

The 8th Circuit has also held, however, that no right is more clearly established than freedom of speech, *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 804 (8th Cir. 1993), and that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech, *id.* (quoting *Rankin*, 483 U.S. at 388). "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."*Rankin v. McPherson*, 483 U.S. 378, 383, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

In Rankin, protected speech by a public employee was found to include this statement about the attempt to assassinate President Reagan:  "if they go for him again, I hope they get him."  If that is protected, then Gray's statements surely were.

**B.    Qualified Immunity Does not Exist.**

As to qualified immunity, recent uncovering of the original text of 42 U.S.C. 1983 establishes that those immunities were abrogated by that statute. When Congress passes new legislation, it "does not write upon a clean slate." *United States v. Texas*, 507 U.S. 529, 534 (1993). Rather, it legislates against a backdrop of established "common law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass n v. Solimino*, 501 U.S. 104, 108 (1991). When Congress decides to craft a new law, it has a choice to make about the common law: it can either retain or reject the "long-established and familiar principles" in the common law. *Texas*, *supra,* 507 U.S. at 534. Courts assume that Congress chose to retain the common law unless the text of the statute says otherwise. *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983). It is thus the statutory text that decides whether common-law principles survive and apply to any particular statute.

The statute at issue here is Section 1983. Starting in 1967, the Supreme Court has assumed that Congress intended to retain common-law principles in actions under Section 1983. *Pierson v. Ray*, 386 U.S. 547, 557 (1967) ("We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983"). In *Pierson,* the Supreme Court reviewed the version of Section 1983 found in the U.S. Code (*id.,* fn. 1), and concluded that the "legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities" (*id*. at 554). Accordingly, the Court granted defendants a "defense of good faith and probable cause" that existed in Mississippi's common law. *Id*. at 557.

That assumed-to-be-incorporated "good faith" defense evolved into the modern doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 806-807 (1982) ("As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.") 2

And with each step along the path of qualified immunity, the Supreme Court has explicitly relied on the supposed silence of Section 1983 to ground the doctrine.

But the Supreme Court was wrong when it assumed that Congress intended to incorporate the common law in Section 1983. The Supreme Court got it wrong because the version of Section 1983 the Court looked at – the U.S. Code – omits language originally passed by Congress.

To see how, we have to go back to the origin of Section 1983. The 42nd Congress passed Section 1983 as part of the Ku Klux Klan Act of 1871. The original text of the statute was reflected in the Statutes at Large. That original version was longer than its contemporary U.S. Code counterpart. Rather than having just two relevant clauses, the original text had three. The first and the third clauses are largely the same today as they were in 1871:

> That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall . . . be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress[.]

Ku Klux Klan Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871).

The original statute, however, contained "additional significant text" where the ellipsis appears above "–[i]n between the words 'shall 'and 'be liable.'" *See* Alexander A. Reinert, *Qualified Immunity s Flawed Foundation*, 111 Calif. L. Rev. 101, 166-67 (forthcoming). Between "shall" and "liable" was an additional clause. That clause said that government officials "shall, **any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding**, be liable" under the statute. Ku Klux Klan Act of 1871, ch. 22, § 1, 17 Stat. 13 (1871) (emphasis added). That language is in an authentic copy of the Civil Rights Act of 1871, certified by the National Archives and Records Administration on August 19, 2022. What does this long-forgotten "Notwithstanding Clause" mean? To determine that, this Court should look to the "ordinary public meaning" of the Notwithstanding Clause "at the time of its

enactment." *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020). Accordingly, the Court should evaluate two key phrases: (1) "custom[ ] or usage of the State," and (2) "to the contrary notwithstanding."

Of course, two Judges in the Eastern District have already rejected this argument on grounds that though it is a serious argument, it is not within their power to overrule the Supreme Court on the existence of qualified immunity.  So, this is mainly offered for preservation purposes.

WHEREFORE, Plaintiff prays for an Order denying the Motion to Dismiss, and for all other proper relief.

Respectfully submitted,
Lucien Gillham,
**SUTTER & GILLHAM, P.L.L.C.**
1501 N. Pierce, Ste. 105
Little Rock, AR  72207
Phone 501-315-1910
Lucien.gillham@gmail.com

By:  */s/ Lucien Gillham,*_____
Lucien Gillham, ARBN 99199
Lucien.gillham@gmail.com