**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JOY GRAY**                                                                                          **PLAINTIFF**

**v.**                                          **Case No. 4:25-cv-01057-LPR**

**RENEE MALLORY,** *in her Individual*
*capacity and in her Official capacity as*
*Secretary of the Arkansas Department of*
*Health*; **DON ADAMS,** *in his Individual*
*capacity and in his Official capacity as Chief*
*of Staff at the Arkansas Department of*
*Health*; **CASSIE COCHRAN,** *in her*
*Individual capacity and in her Official*
*capacity as Deputy Director of Programs at*
*the Arkansas Department of Health*; **CRISTY**
**SELLERS,** *in her Individual capacity and in*
*her Official capacity as Director of Health*
*Advancement at the Arkansas Department of*
*Health*; **and REGGIE ROGERS,** *in his*
*Individual capacity and in his Official*
*capacity as Deputy Chief Legal Counsel at the*
*Arkansas Department of Health*                                              **DEFENDANTS**

**ORDER**

As the Court more fully set out in its Order denying Plaintiff's request for a Preliminary Injunction, this case concerns the Arkansas Department of Health's termination of Joy Gray.[1] Ms. Gray was fired after she made posts on Facebook about the political assassination of Charlie Kirk.[2] Ms. Gray claims her termination violates the First Amendment and the Fourteenth Amendment to the United States Constitution, as well as analog portions of the Arkansas

---

[1] *See* Order Denying Prelim. Inj. (Doc. 34) at 1–4.

[2] When the Court uses the term "posts" in this Order, the Court means to cover both actual posts and comments made on the posts of others.

Constitution.[3] She brings suit against the Department and a number of Department officials under 42 U.S.C. § 1983 and section 16-123-105 of the Arkansas Civil Rights Act.[4]

Pending before the Court is Defendants' Motion to Dismiss.[5] Defendants seek to dismiss all claims in this case.[6] In analyzing this Motion, the Court accepts all non-conclusory facts alleged in the Complaint as true, takes all reasonable inferences from those alleged facts in favor of Ms. Gray, does not consider record facts outside the Complaint except for materials embraced by the Complaint, and determines where the allegations plausibly suggest a violation of law.[7] For the reasons discussed below, the Court GRANTS the Motion in part and DENIES the Motion in part.

## I.    Retaliation-for-Protected-Speech Claim

Let's begin with Ms. Gray's retaliation-for-protected-speech claims.[8] She brings these claims under 42 U.S.C. § 1983 and section 16-123-105 of the Arkansas Civil Rights Act to enforce, respectively, the First Amendment to the United States Constitution, and Article 2, section 6 of the Arkansas Constitution. All parties seem to agree that—at least with respect to the dismissal

---

[3] *See* Compl. (Doc. 1) ¶¶ 19–28.

[4] *See id.* ¶ 1. In its Preliminary Injunction Order, the Court suggested that Ms. Gray was also bringing a 42 U.S.C. § 1985 conspiracy claim. *See* Order Denying Prelim. Inj. (Doc. 34) at 2. That was incorrect. Ms. Gray's Complaint makes crystal clear that her conspiracy claim is brought under 42 U.S.C. § 1983 only. *See* Compl. (Doc. 1) ¶¶ 1, 29–30. Additionally, although Ms. Gray's Complaint included federal substantive due process claims and a state-tort outrage claim, those claims have been dismissed based on the agreement of the parties. *See* Nov. 18, 2025 Order (Doc. 33).

[5] Doc. 15.

[6] *See id.* at 1–2.

[7] *See Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). A document is embraced by a complaint when, among other things, it is "incorporated by reference or integral to the claim, . . . appear[s] in the record of the case, [or is] attached to the complaint . . . ." *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

[8] *See* 42 U.S.C. § 1983 (based on a violation of the First Amendment to the United States Constitution); Ark. Code § 16-123-105 (based on a violation of Article 2, section 6 of the Arkansas Constitution).

arguments made by the Defendants—the protections for speech in the federal Constitution and the Arkansas Constitution are co-extensive.[9] So, the Court will analyze both claims at the same time.

Defendants' principal argument is that the Complaint is deficient because it does not allege specific facts to show that Ms. Gray's social media comments were on a matter of public concern.[10] Defendants have something of a point: although the Court now has the specific posts at issue in the record, those posts are not contained in (or specifically described in) the Complaint.[11] Still, the Court concludes it does not have to go through the rigamarole of Ms. Gray amending her Complaint to cure this technical deficiency. That is because the Defendants have conceded that Ms. Gray's social media posts were "on a matter of public concern."[12] On a motion to dismiss, the Court may consider concessions of a defendant where those concessions are clearly against defendants' interests.[13]

Defendants' next argument is that the Complaint fails to allege specific facts to show that each individual Defendant engaged in retaliation.[14] A *sine qua non* of a retaliation-for-protected-speech claim is, well, an act of retaliation. That is, for a retaliation claim to proceed against a particular defendant, a plaintiff must plausibly allege that the defendant took (or at least pushed

---

[9] *Compare* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 4–5, *with* Pl.'s Am. Resp. Br. to Defs.' Mot. to Dismiss (Doc. 24) at 4–5.

[10] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 4–6.

[11] *Contrast* Compl. (Doc. 1), *with* Defs.' Resp. in Opp. to Pl.'s Mot. for Prelim. Inj. (Doc. 17) (Exhibits 1–2).

[12] Defs.' Resp. in Opp. to Pl.'s Mot. for Prelim. Inj. (Doc. 17) at 6. Further, the posts themselves (which are in the record) qualify as materials embraced by the Complaint. *See supra* note 7. And Defendants can't question the posts' authenticity because it was Defendants that provided the posts to the Court. *See* Defs.' Resp. in Opp. to Pl.'s Mot. for Prelim. Inj. (Doc. 17) (Exhibits 1–2).

[13] *See, e.g.*, *Northland Baptist Church of St. Paul, Minn. v. Walz*, 530 F. Supp. 3d 790, 816 (D. Minn. 2021), *aff'd sub nom. Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365 (8th Cir. 2022) (accepting defendants' concession that certain facts fell in plaintiffs' favor); *Morris v. Medtronic, Inc.*, No. 4:22-cv-643, 2023 WL 2387497, at *1 (E.D. Mo. Mar. 7, 2023) (accepting defendant's concession that plaintiff stated a plausible claim for relief for certain specific facts).

[14] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 5–6.

forward) an adverse action that would chill a person of ordinary firmness from speaking.[15]  The Complaint meets this bar with respect to Ms. Sellers and Mr. Rogers, but not with respect to any other Defendants.

The Complaint alleges that Ms. Sellers was Ms. Gray's direct supervisor and that she was the person who actually terminated Ms. Gray.[16]  Termination counts as an adverse action that would chill an ordinarily firm person from speaking.[17]  So, the Complaint plausibly alleges a qualifying adverse action taken by Ms. Sellers.  As for Mr. Rogers, the Complaint alleges that, soon after Ms. Gray made her posts, Ms. Sellers required Ms. Gray to attend a meeting with Mr. Rogers.[18]  The Complaint alleges that, at this meeting, Mr. Rogers interrogated Ms. Gray about her posts, spoke loudly to Ms. Gray, refused to listen to Ms. Gray's explanations, accused her of bad faith,

---

[15] *See Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024) ("The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."); *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (same).  The Court emphasizes that "[s]ection 1983 liability is personal." *Jones v. City of St. Louis*, 104 F.4th 1043, 1049 (8th Cir. 2024) (quoting *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009)).  That means that a plaintiff "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights" against each individual defendant. *Id.* (internal quotations omitted); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))).  Put differently, a § 1983 retaliation claim can only survive a motion to dismiss against individual defendants that the complaint sufficiently alleges were personally involved in the alleged retaliatory act(s).  *See Roberts v. Ark. Mil. Dep't*, No. 2:13-cv-00091, 2014 WL 2740876, at *2 (E.D. Ark. June 17, 2014) ("Personal liability under section 1983 requires proof of intentional discrimination by that defendant, i.e., proof that the particular defendant acted with an impermissible motive, not merely that he knew of his subordinate's impermissible motives and failed to put a stop to their actions.").

[16] *See* Compl. (Doc. 1) ¶¶ 8, 13.

[17] In the employment context, an action is unquestionably adverse to a person if it "effectuate[s] 'a material change in the terms or conditions of . . . [his] employment.'" *Duffy v. McPhillips*, 276 F.3d 988, 992 (8th Cir. 2002) (quoting *Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir. 2001)).  Termination easily meets that definition. *See id.* at 991–92 (noting that actions less severe than termination can qualify as adverse); *Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) ("[A]ctions short of termination can at times be considered adverse employment decisions . . . .").  In more generic contexts, an action is adverse to a person if it is "unfavorable" (probably in a more than *de minimis* way) to that person. *See Adverse*, MERRIAM-WEBSTER DICTIONARY (New ed. 2016).  Termination easily meets that definition.  And termination "would chill a person of ordinary firmness" from speaking where the termination "could reasonably be associated with the defendants' alleged retaliation." *Bennie v. Munn*, 58 F. Supp. 3d 936, 944 (D. Neb. 2014), *aff'd*, 822 F.3d 392 (8th Cir. 2016).

[18] *See* Compl. (Doc. 1) ¶ 10.

suggested her posts violated agency policies, and demanded she provide an apology letter and a written rebuttal to the allegations.[19]  The Complaint alleges that Ms. Gray was fired shortly after her counsel asked Mr. Rogers for an extension of the time provided for such documents.[20]  And the Complaint alleges that, when Ms. Sellers terminated Ms. Gray by phone, Mr. Rogers was on the phone.[21]  Putting aside whether Mr. Rogers' conduct at the meeting or his demand for a written rebuttal and apology letter would on their own rise to the level of a qualifying adverse action, the reasonable inference from the Complaint's allegations is that Mr. Rogers was—to some extent— an active participant in the decision to terminate Ms. Gray.  That's enough at this stage.

The Complaint does not explicitly allege any act or actions on the part of Secretary Mallory, Chief of Staff Adams, or Deputy Director Cochran.  The Court acknowledges that the Complaint alleges that: (1) "[o]n information and belief, the termination . . . [was] undertaken pursuant to a policy, custom, practice, directive, or ratification by [Department] leadership and coordinated with the Governor's Office through Chief of Staff Don Adams";[22] and (2) "Defendants agreed, expressly or tacitly, to retaliate against Ms. Gray . . . and committed overt acts in furtherance, including . . . terminating her . . . ."[23]  But these are the type of vague and conclusory allegations that a court need not (and should not) credit—even at the motion-to-dismiss stage.  What specific actions did Secretary Mallory, Chief of Staff Adams, or Deputy Director Cochran take that would

---

[19] *See id.* ¶¶ 11–12.

[20] *See id.* ¶ 13.

[21] *See id.*

[22] *Id.* ¶ 17.

[23] *Id.* ¶ 30.

count as participation in Ms. Gray's termination?  We do not know because the Complaint does not tell us.[24]

There is one last (but sizeable) point to be made concerning the presently surviving retaliation-for-protected-speech claims.  Defendants argue that the individual-capacity portion of these claims should be dismissed.[25]  According to Defendants, Ms. Sellers and Mr. Rogers are entitled to qualified immunity.[26]  But, as the Court will explain below, Defendants are wrong—at least for now.

The doctrine of qualified immunity gives government officials breathing room to make reasonable but mistaken judgments.  It protects "all but the plainly incompetent or those who knowingly violate the law."[27]  To determine whether a defendant is entitled to qualified immunity at the motion-to-dismiss stage, we must consider (1) whether the facts alleged in the Complaint makes it plausible that a defendant's conduct violated a constitutional right; and (2) whether the allegedly violated right was clearly established at the time of the alleged violation.[28]  Under current

---

[24] There is some evidence in the record—submitted in connection with the Preliminary Injunction Motion—that suggests that Ms. Gray might be able to amend her Complaint to fix the deficiency identified above.  She likely can allege facts that make it plausible that Mallory, Adams, or Cochran took some part in the termination decision, or took other action that rose to the level of adverse action that would chill an ordinarily firm person from speaking.  So, although the Court is dismissing the retaliation-for-speech claims against Mallory, Adams, and Cochran, the Court does so without prejudice and grants Ms. Gray leave to amend her Complaint to add allegations against those Defendants.

[25] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 14–17.

[26] *See id.*  Defendants' qualified-immunity arguments are not limited to Ms. Sellers and Mr. Rogers.  They extend to all Defendants.  The Court need not reach the qualified-immunity argument with respect to the other individual-capacity Defendants because the Court has already dismissed those other Defendants.  Similarly, although Defendants make qualified-immunity arguments concerning claims other than the retaliation-for-protected-speech claims, the Court need not reach those arguments because (as explained below) the Court dismisses those other claims on other grounds.

[27] *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (internal quotations omitted); *Joseph v. Wheeler*, 144 F.4th 1111, 1114 (8th Cir. 2025).

[28] *See Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024).

Eighth Circuit precedent, a right is clearly established at the moment that a Supreme Court case or Eighth Circuit case makes clear that the right exists.[29]

It is important not to undertake this analysis at a high level of generality.[30] The dispositive question is whether the violative nature of the defendant's particular conduct is clearly established.[31] "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"[32] And although it is true that there need not be a case directly on point, Supreme Court or Eighth Circuit precedent must place the existence of the right—narrowly understood—beyond debate.[33]

As to prong one of the qualified immunity analysis, Defendants first argue that the Complaint does not sufficiently allege Ms. Gray engaged in protected speech.[34] The Court has already addressed (and rejected) this argument earlier in this Order.[35] Defendants next argue that the Complaint does not sufficiently allege that Ms. Gray's protected speech was a substantial factor

---

[29] *See Martin v. Turner*, 73 F.4th 1007, 1010 (8th Cir. 2023) ("When considering whether a right is clearly established, '[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' . . . 'This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue.'" (first quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); then quoting *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021))). The Court acknowledges that Eighth Circuit precedent recognizes the possibility of a right being clearly established by other means as well. *See Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 835 (8th Cir. 2021) ("There must be precedent, controlling authority, or a robust consensus of cases of persuasive authority. There may also be the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (internal citations and quotations omitted)); *see also De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) ("Absent a case that is controlling authority in our jurisdiction, we look for 'a robust consensus of cases of persuasive authority.'" (quoting *Ashcroft*, 563 U.S. at 742)).

[30] *See Ashcroft*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.").

[31] *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" (alteration in original) (quoting *Ashcroft*, 563 U.S. at 742)).

[32] *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

[33] *See supra* note 29.

[34] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 14–15.

[35] *See supra* p. 3 (noting that Defendants conceded the presumptively protected nature of the speech and that the posts themselves may be considered as materials embraced by the Complaint).

in her termination.[36]  But the Complaint alleges a termination very close in time to the protected speech and after an internal meeting expressly focused on the protected speech.[37]  The reasonable inference here is that the termination was either exclusively or substantially motivated by Ms. Gray's protected speech.

It is possible that, when Defendants argue that the Complaint fails to sufficiently allege that Ms. Gray engaged in protected speech, Defendants mean that the Complaint does not allege facts making it plausible that the protected nature of Ms. Gray's speech would survive a *Pickering* analysis.  If this is what Defendants mean, the Court has a very different understanding of what a Complaint must plead in a case like this one.  In the Court's view, the Complaint must simply plead facts to make it plausible that the speech is presumptively protected—i.e., that the speech is private speech on a matter of public concern, and that the speech does not constitute a true threat, fighting words, obscenity, or some other obvious exception to the First Amendment.  The Complaint need not plead facts relating to the absence of disruption or the insubstantial nature of the disruption. That is because *Pickering* balancing only applies if the State raises disruption (and supplies evidence of it) to justify the termination.[38]  Accordingly, a Complaint need not front the disruption issue and need not allege facts to prove a negative.  The motion-to-dismiss stage is not the right time for *Pickering*-related arguments.[39]

---

[36] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 15.

[37] *See* Compl. (Doc. 1) ¶¶ 10–13.

[38] *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015) ("[I]f the possibility of a First Amendment claim has arisen, then our second inquiry is to ask whether [the employer] has produced evidence to indicate the speech had an adverse impact on the efficiency of the [employer's] operations.  If the employer shows a sufficient adverse impact, then we proceed to the *Pickering* balancing test.  If it does not, then the qualified immunity defense must fail." (internal citations and quotations omitted)).

[39] *See Lyons v. Vaught*, 781 F.3d 958, 961 n.1 (8th Cir. 2015) (noting that the question "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public . . . . can rarely, if ever, be determined on a Rule 12(b)(6) motion to dismiss" (internal citations and quotations omitted))); *Bailey v. Barrett*, No. 17-cv-0937, 2018 WL 2051513, at *4 (W.D. Mo. May 2, 2018) (observing that there appear to be no cases "in which the *Pickering* defense was resolved on [a] motion to dismiss, without

As to prong two of the qualified immunity analysis, Defendants seem to be arguing that qualified immunity is appropriate because the retaliation-for-protected-speech claims at issue here "are subject to a test which balances the interests of the employee's speech and the interest of the State, as an employer, in promoting the efficiency of its public services."[40]  According to Defendants, "[a] constitutional claim that is subject to a balancing test, particularly in light of the sparse factual allegations in Ms. Gray's Complaint, cannot be . . . clearly established."[41]  The fallacy in this argument is that, as just discussed above, the *Pickering* balancing question is not ripe at the motion-to-dismiss stage.  Because courts only get to *Pickering* balancing if the State raises disruption (and supplies evidence of it) to justify the termination, this is not the right stage for the Court to decide whether a balancing test will apply in this case.  This might be different if the Complaint alleged facts that suggested *Pickering* balancing would necessarily apply or if Ms. Gray conceded that *Pickering* balancing applies.  But that is not the case at bar.

Depending on what discovery reveals—especially in combination with the evidence already in the record that may not be considered on a motion to dismiss—it is certainly possible that Defendants will prevail on the foregoing qualified-immunity argument at summary judgment. But we are not there yet.  The Complaint's allegations make plausible that Ms. Gray was terminated for her posts concerning Charlie Kirk's assassination.[42]  And the Complaint (unsurprisingly) does not affirmatively suggest the kind of disruption that would trigger *Pickering* balancing.  In such

---

evidentiary support").  *But see O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 726 (1996) (Scalia, J., dissenting) (first stating that the majority opinion leads to the conclusion that "*Pickering* balancing can never support the granting of a motion to dismiss[,]" and then contending that "[t]here is . . . no reason in principle why [*Pickering* balancing] should be dismissal proof").

[40] Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 16.

[41] *Id.* at 16–17.

[42] At the time of Ms. Gray's firing, it was clearly established that (1) Ms. Gray's posts were presumptively protected speech, and (2) termination constituted adverse action that would chill an objectively firm person from speaking.  *See supra* pp. 3–4.

circumstances, the logic of the Eighth Circuit's opinion in *Melton v. City of Forrest City* dictates that the case moves forward for now.[43] So, the Court rejects (only for now) the specific qualified-immunity argument made by Defendants.

## II.   Procedural Due Process Claim

We move to Ms. Gray's procedural due process claim. In her Complaint, Ms. Gray says that she "had a property interest in continued employment created by Arkansas law, policies, and practices . . . ."[44] Ms. Gray further says that she had "a liberty interest in her good name and reputation."[45] And she says that "Defendants deprived her of those interests without constitutionally adequate notice and [an] opportunity to respond before termination and without a fair post-termination name-clearing hearing, while publicizing reasons that foreclose future employment."[46]

With respect to the right to adequate notice and an opportunity to contest a termination, Defendants argue that Ms. Gray fails to state a claim because she lacks a property interest in her job.[47] Ms. Gray does not respond at all to Defendants' argument. That is, she does not argue in any way whatsoever that she has a property interest in her job. This appears to be because Defendants are absolutely right on the law. For the reasons Defendants set out on pages 6–7 of their brief, Ms. Gray's procedural due process claim is dismissed to the extent it is based on (1) an

---

[43] *Cf. Melton v. City of Forrest City*, 147 F.4th 896, 904 (8th Cir. 2025) ("Insufficient evidence of disruption would be 'fatal to the claim of qualified immunity' because there would be no governmental interest to weigh." (quoting *Belk v. City of Eldon*, 228 F.3d 872, 882 (8th Cir. 2000))).

[44] Compl. (Doc. 1) ¶ 25.

[45] *Id.*

[46] *Id.* ¶ 26.

[47] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 6–7.

alleged property interest in her job, and/or (2) an alleged lack of adequate notice of and an opportunity to contest her termination.[48]

Unlike the ability to contest termination, however, the ability to obtain a name-clearing hearing is not related to an employee's property interests. Instead, as further explained in the Court's Preliminary Injunction Order, the procedural due process right to a name-clearing hearing is related to an employee's liberty interest.[49] The long and short of it is that Ms. Gray is entitled to a name-clearing hearing only if her employer disseminates stigmatizing statements against her. And as to what counts as stigmatizing, the Court adopts the legal standards it set out in its Preliminary Injunction Order.[50]

The problem for Ms. Gray is that the Complaint alleges no facts that make it plausible that the Defendants even made—let alone disseminated—stigmatizing statements. The Complaint says Mr. Rogers "accus[ed] her of bad faith,"[51] that the Department "asserted—incorrectly—that Ms. Gray 'refused' to submit a rebuttal,"[52] and that the Department "cited her 'reaction' during the meeting [with Mr. Rogers] as a basis for termination."[53] None of this comes close to the level of stigma necessary to require a name-clearing-hearing under Eighth Circuit caselaw. It is true, of course, that the Complaint also says "stigmatizing reasons" for Ms. Gray's termination were "disseminated within the agency and to prospective employers, including insinuations about [Ms. Gray's] honesty, temperament, and fitness for public service."[54] But this is exactly the type

---

[48] *See id.*

[49] *See* Order Denying Prelim. Inj. (Doc. 34) at 3 n.9.

[50] *See id.* at 12–17.

[51] Compl. (Doc. 1) ¶ 11.

[52] *Id.* ¶ 15.

[53] *Id.*

[54] *Id.* ¶ 16.

of vague and conclusory allegation that the Court need not (and should not) credit—even at the motion-to-dismiss stage.[55]

As currently pled, the Complaint lacks alleged facts that would plausibly suggest the Department disseminated statements about Ms. Gray that were stigmatizing enough to meet the Eighth Circuit's standard.[56]   Maybe Ms. Gray can fix this deficiency through the amendment process.  Maybe not.  We shall see.[57]

### III.   Conspiracy Claim

Ms. Gray's conspiracy claim is brought under 42 U.S.C. § 1983.[58]   To state a viable claim, the Complaint must allege facts that make it plausible that: (1) Defendants conspired to deprive Ms. Gray of a constitutional right; (2) at least one Defendant "engaged in an overt act in furtherance of the conspiracy"; and (3) "the overt act injured" Ms. Gray.[59]   Moreover, because the Court has

---

[55] The record contains a document titled Notice of Disciplinary Action, as well as an attachment to that document, that may include the statements the Complaint is characterizing as stigmatizing.  *See* Ex. C (Termination Communication) to Aff. of Joy Gray (Doc. 8) at 8–10.  The Court is not sure that this evidence counts as material embraced by the Complaint and is thus reticent to consider the evidence at the motion-to-dismiss stage.  Even if the Court were to consider those statements, however, the Court has already explained (in its Preliminary Injunction Order) why such statements are not sufficiently stigmatizing to trigger the requirement for a name-clearing hearing.  *See* Order Denying Prelim. Inj. (Doc. 34) at 13–17.

[56] *See Winskowski v. City of Stephen*, 442 F.3d 1107, 1109–10 (8th Cir. 2006) ("As we have held previously, '[a] government employee is entitled to procedural due process . . . when he has been deprived of a constitutionally protected . . . liberty interest.  An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.'" (quoting *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994))).  Another problem for Ms. Gray is that the Complaint does not clearly allege that Ms. Gray requested a name-clearing hearing (as opposed to a grievance/appeal).  Such a request is necessary to make out a procedural due process claim based on the lack of a name-clearing-hearing.  *See* Order Denying Prelim. Inj. (Doc. 34) at 13.

[57] Additionally, the Complaint does not clearly allege that Ms. Gray requested a name-clearing hearing (as opposed to a grievance/appeal).  Such a request is necessary to make out a procedural due process claim based on the lack of a name-clearing-hearing.  *See* Order Denying Prelim. Inj. (Doc. 34) at 13.

[58] *See* Compl. (Doc. 1) ¶¶ 29–30.

[59] *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).

12

dismissed all other claims, the only claims that can support a § 1983 conspiracy claim are the retaliation-for-protected-speech claims.[60]

As to the first prong of the § 1983 conspiracy test, the Complaint "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'"[61]  The Complaint fails to chin this bar.  To be sure, the Complaint alleges that "Defendants agreed, expressly or tacitly, to retaliate against Ms. Gray for protected speech and to deny her due process . . . ."[62] Which Defendants agreed?  With which other Defendants (or other persons) did they agree?  When was the agreement made?  How was the agreement made?  The Complaint does not give us any of that information.

The Court acknowledges that it has concluded earlier in this Order that the Complaint's allegations make it plausible that (1) Ms. Sellers terminated Mr. Gray and (2) Mr. Rogers participated in the decision to terminate Ms. Gray.[63]  But the fact that two people are both involved in the termination of an employee does not mean there was an agreement between those two people to deprive the employee of a constitutional right.  And there is just not enough in the Complaint at this juncture to make such an agreement plausible.  Perhaps that deficiency can be remedied by amendment.  So, although the Court dismisses the § 1983 conspiracy claims against all Defendants, the Court does so without prejudice and grants Ms. Gray leave to amend her Complaint on this point.[64]

---

[60] *See Riddle v. Riepe*, 866 F.3d 943, 948–49 (8th Cir. 2017) ("Absent a constitutional violation, there is no actionable conspiracy claim." (internal citations and quotations omitted)); *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999) (affirming dismissal of § 1983 conspiracy claim because underlying constitutional claims were properly dismissed).

[61] *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983)).

[62] Compl. (Doc. 1) ¶ 30.

[63] *See supra* pp. 3–5.

[64] The Complaint does allege that the termination was "coordinated with the Governor's office . . . ." Compl. (Doc. 1) ¶ 17.  But "coordination" is different than a meeting of the minds, and (in any event) this allegation does not have

One final point here is worth mentioning. With respect to the § 1983 claim, Defendants also argue that an agreement between agents of the same official entity cannot be a basis of an unlawful conspiracy claim.[65] This is known as the intra-corporate conspiracy doctrine.[66] The Eighth Circuit has not yet decided whether the intra-corporate conspiracy doctrine applies to alleged § 1983 conspiracies.[67] And other circuits appear to be split on the issue.[68] The Court need not (and does not) address this question now because the Court has decided that the Complaint does not allege sufficient facts to make plausible the existence of a conspiracy.[69]

## CONCLUSION

The only claims that currently make it past the motion-to-dismiss stage are the retaliation-for-protected-speech claims—both the federal and state versions of that claim—against Ms. Sellers and Mr. Rogers in their individual and official capacities.[70] All other claims are dismissed. But

---

a sufficient level of specificity to satisfy Eighth Circuit precedent. *See Manis*, 862 F.2d at 681. Somewhat similarly, although the Complaint references "ratification" of the termination by Department leadership, the allegation is written in the disjunctive so that this ratification is not actually alleged to have occurred. *See* Compl. (Doc. 1) ¶ 17 ("On information and belief, the termination and denial of post-deprivation process were undertaken pursuant to a policy, custom, practice, directive, or ratification by [Department] leadership . . . .").

[65] *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 9–10.

[66] *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) ("Under this principle—sometimes called the intracorporate-conspiracy doctrine—an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.").

[67] *See Faulk v. City of St. Louis*, 30 F.4th 739, 749 (8th Cir. 2022) ("[W]e have never definitively addressed the issue whether the [intra-corporate conspiracy] doctrine applies to § 1983 conspiracy claims.")

[68] The *Faulk* case highlights the split:

> Two [circuits] have expressly held that the [intra-corporate conspiracy] doctrine applies to § 1983 conspiracy claims, but its application in a particular case is subject to recognized exceptions. *See Jackson v. City of Cleveland*, 925 F.3d 793, 817–20 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020); *Grider v. City of Auburn*, 618 F.3d 1240, 1261–63 (11th Cir. 2010). Others have questioned whether the doctrine should apply, at least "[w]here 'equal protection' is at issue." *Stathos v. Bowden*, 728 F.2d 15, 20–21 (1st Cir. 1984); *see Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126–27 (10th Cir. 1994).

*Faulk*, 30 F.4th at 749.

[69] The Court notes that Defendants did not assert qualified immunity based on the lack of clearly established law concerning the intra-corporate conspiracy doctrine. *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 16) at 16–17.

[70] Ms. Sellers and Mr. Rogers are sued in both their official and individual capacities. The official capacity claims are treated as claims against the Department. So, the Arkansas Department of Health is still a *de facto* Defendant in this

the Court will give Ms. Gray an opportunity to amend her Complaint because it is possible that she can fix at least some of the deficiencies identified in this Order. Ms. Gray may amend her Complaint (without seeking leave) so long as she does so within 30 days from the date of today's Order.

IT IS SO ORDERED this 1st day of May 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

case—and that will be true even if Ms. Gray chooses not to file an amended complaint. In this regard, the Court notes that Defendants have not raised any specific challenge to the official capacity claims in excess of the arguments they raised that are applicable to both individual and official capacity claims.